IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JOHN KLAR
MARCY KLAR,

          Plaintiffs,

v.                                                         Civil Action No. 3:13-cv-00462-JAG

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,
SETERUS, INC.

          Defendants.

**MEMORANDUM OPINION**

This matter comes before the Court on the defendants' Partial Motion to Dismiss (Dk. No. 34.) The defendants, Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. ("Seterus"), seek to dismiss six of the seven counts contained in the plaintiffs' Second Amended Complaint. John and Marcy Klar's complaint contains a mixture of state and federal claims relating to the defendants' ownership and servicing of their mortgage. For the reasons stated below, the Court will GRANT in part and DENY in part the defendants' motion to dismiss Counts I-VI.

### I. Statement of Facts

These facts come from the Klars' complaint, and the Court will treat them as true for the purposes of this motion to dismiss.

This suits stems from a SunTrust mortgage on the Klars' home. After acquiring the loan, Fannie Mae contracted with Seterus to service the mortgage,[1] and Seterus notified the Klars of the transfer. (Dk. No. 28 at ¶¶ 3, 15, 16.) Upon receiving the notification, the Klars applied for a mortgage modification under the Home Affordable Modification Program ("HAMP.") (Dk. No. 28 at ¶ 15.) Seterus approved the plaintiffs' application in January 2012 and established a three-month trial payment period. (Dk. No. 28 at ¶ 17.) After the Klars successfully completed this trial payment period, the Klars signed a mortgage modification agreement ("Agreement") containing new principal and escrow amounts. (Dk. No. 28 at ¶ 19.)

The Klars allege that the defendants mismanaged their account from the moment the modification went into effect. First, the Klars allege that the defendants misapplied a payment and then misstated the amount due on the loan. The Agreement set the deadline for the first payment on May 1, 2012, with an "industry-standard" 15-day grace period. (Dk. No. 28 at ¶ 22.) The Klars made their first monthly payment on May 7, 2012, and have since paid on time every month. (Dk. No. 28 at ¶¶ 22-23.) The defendants cashed the May payment on the same day the Klars submitted it, but have somehow failed to credit it to the Klars' account. (Dk. No. 28 at ¶¶ 25-26.) In August, several months after cashing the May payment, Seterus notified the Klars that their account had become delinquent—apparently because of the uncredited May payment. (Dk. No. 28 at ¶ 26.) The Klars have asked the defendants to update their account, without success.

Compounding the problem, Seterus has sent the Klars an inaccurate account statement every month. The statements have not been consistent, with each one showing the Klars owing varying monthly payments that differ from the terms of the Agreement. (Dk. No. 28 at ¶ 31.)

---

[1] Although Fannie Mae owns the plaintiffs' mortgage, the Klars only have interacted with Seterus. In fact, the plaintiffs thought that Seterus owned their mortgage until after they filed their First Amended Complaint. (Dk. No. 22 at p. 1.)

Again, the Klars have contacted the defendants about the mistake. (Dk. No. 28 at ¶¶ 32, 34.) During one conversation about the monthly statements, Seterus' representative admitted that the account issues reflect errors by the defendants. (Dk. 28 No. at ¶ 36.) Nevertheless, the defendants have not corrected the Klars' account.

The parties find themselves in a standoff. The Klars have refused to pay more than they agreed to pay in the modification. In response, the defendants have threatened to initiate foreclosure proceedings and have reported the plaintiffs' account as delinquent to the three major credit-reporting agencies. (Dk. No. 28 at ¶¶ 39, 43.) These negative credit reports have caused the Klars to suffer extreme financial difficulties, and made it difficult for them to open a bank account or obtain student loans to pay for their children's' educations. (Dk. No. 28 at ¶¶ 40, 43.) Additionally, they have suffered various physical ailments. (Dk. No. 28 at ¶¶ 41, 49.)

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246, 254–55 (W.D. Va. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter that, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires the plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when

accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, that is, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). Although the Court must accept as true all well-pleaded factual allegations, this does not hold true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Moore v. Flagstar Bank*, 6 F.Supp.2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The Court may also look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *See Pueschel v. United States*, 369 F.3d 345, 353 n. 3 (4th Cir. 2004) (citations omitted).

### III. Discussion

The Klars' complaint contains seven counts, six of which the defendants seek to have dismissed. The six counts at issue are: Count I – fraud; Count II – constructive fraud; Count III – Fair Credit Reporting Act ("FCRA") violations; Count IV – Real Estate Settlement Procedures Act ("RESPA") violations; Count V – negligent infliction of emotional distress; and Count VI – Fair Debt Collection Practices Act ("FDCPA") violations. The Court will discuss each count in order.

### a) Counts I and II – Fraud and Constructive Fraud

The first two counts in the plaintiffs' complaint allege that the defendants committed fraud and constructive fraud. The Court will discuss these claims together.

The Federal Rules impose a heightened pleading standard on fraud claims, requiring claimants to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity standard requires the claimant to include, in her complaint, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 120 (4th Cir. 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999), *rev'd sub nom. on other grounds Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S.Ct. 2296 (2011).

Although they share many similar elements, fraud and constructive fraud constitute two distinct torts under Virginia law. Both claims require the plaintiff to show that the defendant made: (1) a false representation (2) of material fact (3) that the plaintiffs relied upon (4) to their detriment. *Sales v. Kecoughtan Hous. Co., Ltd.*, 279 Va. 475, 481 (2010). The claims differ in that, to prove a claim of fraud, the plaintiff must show that the defendant falsely represented a material fact *with the specific intent to defraud the plaintiff*, whereas, in order to prove a constructive fraud claim, the plaintiff only needs to show that the defendant made the misrepresentation *innocently or negligently. Id.* Importantly, both claims require the plaintiff to show that she specifically relied upon the defendant's misrepresentation. The defendant will not incur liability simply for misrepresenting a material fact. Unless the plaintiff specifically relied upon the defendant's false statement, the defendant has committed neither fraud nor constructive fraud.

The Klars' complaint does not clearly state which of the defendants' statements amounts to fraud. At some points, the Klars seem to contend that fraud occurred when Seterus sent them inaccurate account statements. For instance, in their complaint the Klars say "The first monthly statement . . . is a false representation of a material fact. . . ." (Dk. No. 28, ¶ 51.) If the account statements form the basis of the fraud, the claim cannot pass muster, because the Klars did not rely on those statements to their detriment. The Klars make it clear that they protested any statements showing any amount other than what they agreed to in the modification agreement. In fact, they refused to pay the statement amounts, submitting the agreed upon payment instead. Without detrimental reliance, the plaintiffs cannot prevail on a fraud claim.

At other points, however, the Klars indicate that they relied on representations made in the modification agreement. They say that they placed "reliance on the actual loan modification and escrow agreement executed by Defendants on 11 May 2012 by Andrew Justicia." (Dk. No. 28 at ¶ 51.) Regardless, the Court finds that the Klars have pled sufficient facts to make out valid claims for fraud and constructive fraud arising from the modification agreement. They satisfactorily detail the time, place and contents of the false statement, as well as the identity of the speaker. They clearly relied on these allegedly false representations.

Furthermore, while the Klars' complaint contains a somewhat muddled description of the precise statements that constitute fraud, the Court must afford some latitude to *pro se* litigants. In this case, the Court reads the Klars' allegations expansively to indicate that fraud occurred in either the negotiation or execution of the modification agreement, that the misrepresentation concerned the amount of the Klars' monthly payment, and that the plaintiffs relied on the defendants' statements.

The Court denies the motion to dismiss Counts I and II, but holds that the Klars cannot rely on their account statements as fraudulent representations. Given the ambiguity of their complaint, the Court also directs the plaintiffs to file a more definite statement identifying the precise statements they allege as fraudulent. The more definite statement is due in twenty-one days. After the plaintiffs file the bill of particulars, the defendants, if so inclined, may file a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

### b) Count III – Fair Credit Reporting Act

In Count III, the Klars say that the defendants violated the Fair Credit Reporting Act ("FCRA"). 15 U.S.C. §§ 1681 *et seq.* Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007)). The Klars say the defendants provided false information about them to a credit-reporting agency.

According to the parties, the defendants qualify as "furnishers" under the FCRA, a classification with which the Court agrees.[2] Furnishers supply credit information to reporting agencies. The FCRA subjects furnishers to liability in two situations. *See* §§ 1681s-2(a), 1681s-2(b). First, under § 1681s-2(a), furnishers must provide credit-reporting agencies with accurate information, and the FCRA holds them liable for failing to do so. This section, however, does not provide a private cause of action. § 1681s-2(d); *see also Rossman v. Lazarus*, No. 1:08cv316, 2008 WL 4181195, at *7 (E.D. Va. Sept. 3, 2008). Rather, only federal agencies and

---

[2] The FCRA defines a furnisher as one who "regularly and in the ordinary course of business furnishes information to one or more credit-reporting agencies about the person's transactions or experiences with any consumer." 15 U.S.C. 1681s-2(a)(2); *see also Ayers v. Equifax Inform. Servs.*, No. 3:03cv551, 2003 WL 23142201, at *1 n. 1 (E.D. Va. December 16, 2003).

7

officials and state officials may enforce violations of § 1681s-2(a). *Id.* This limitation prevents the Klars from bringing a claim under § 1681s-2(a).

In contrast, § 1681s-2(b) does provide a private cause of action. Under § 1681s-2(b), furnishers face liability for failing to conduct a reasonable investigation into a consumer's claims after they have received notice from a credit-reporting agency that the consumer has disputed the accuracy of any information reported by the furnisher. *See Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004). Liability under this section depends entirely upon whether the furnisher received notice of the consumer's complaints *from the credit-reporting agency*. Section 1681s-2(b) does not subject a furnisher to liability until it has received such notice. Upon notification, the FCRA requires that the furnisher "conduct a reasonable investigation of [its] records to determine whether the disputed information can be verified." *Id.* Determining the reasonableness of an investigation "is [typically] a factual question reserved for trial." *Aviles v. Equifax Inform. Servs.*, 521 F.Supp.2d 519, 523 (E.D. Va. 2007) (stating that "[s]ummary judgment is proper . . . if the reasonableness of the defendant's procedures is beyond question").

Again, the Klars' complaint is not factually clear on this claim. The complaint says that the "Plaintiffs have complied with all requirements of notification and information sent to the mortgage servicer in accordance with the FCRA." (Dk. No. 28 ¶ 70.) One can construe this statement to mean that the Klars only complained to the furnishers (in which case they do not have a claim) or that, pursuant to the FCRA, they complained to the credit-reporting agency, which presumably notified the defendants of the need to check their records (in which case they may have a claim). In one of their briefs, the Klars assert that they notified the credit-reporting agencies. (Dk. No. 43 at p. 5.) Giving the *pro se* plaintiffs the benefit of the doubt, the Court

will construe Count III to include an allegation that they reported their grievance to the credit-reporting agency, and that the defendants then failed to investigate the matter properly.

The Court therefore DENIES the motion to dismiss Count III.

### c) Count IV – Real Estate Settlement Procedures Act

The Klars' fourth count alleges that the defendants violated RESPA. Congress enacted RESPA to help consumers better understand the home purchase and settlement process in hopes of reducing settlement costs. *Stith v. Thome*, 488 F.Supp.2d 534, 554 (E.D. Va. 2007) (citing 12 U.S.C. § 2601). RESPA creates a private cause of action only for: "(1) failure of a loan servicer to provide proper notice about a transfer of servicing rights or to respond to a qualified written request for loan information, 12 U.S.C. § 2605; (2) payment of a kickback or unearned fees for real estate settlement services, 12 U.S.C. § 2607; and (3) requiring a buyer to use a title insurer chosen by the seller, 12 U.S.C. § 2608." *Grant v. Shapiro & Burson, LLP*, 871 F.Supp.2d 462, 470 (D. Md. 2012).

Fannie Mae did not originate the Klars' mortgage. It purchased the mortgage from SunTrust Mortgage, Inc. (Dk. No. 28 at ¶ 15.) Fannie Mae and Seterus became involved with the Klars after the completion of the real estate settlement process. Thus, the only conceivable claim the Klars could have under RESPA would stem from the defendants' failure to provide them with proper notice regarding a transfer of service rights or a failure to respond to a qualifying request by the Klars for loan information. The Klars, however, do not claim that they received inadequate notice or that the defendants ignored the Klars' numerous complaints. The Klars simply do not have a valid claim under RESPA. The Court will DISMISS Count IV.

### d) Count V – Negligent Infliction of Emotional Distress

The Klars' fifth count alleges negligent infliction of emotional distress by the defendants. They claim that the defendants' errors in handling their mortgage have caused them "emotional distress and anxiety. . . manifested in physical ailments. . . ." (Dk. No. 28 ¶ 80.)

Virginia law on negligent infliction of emotional distress is, at best, murky. The seminal Virginia case on the matter, *Hughes v. Moore,* 214 Va. 27, 197 S.E.2d 214 (1973), says that, without some physical impact, generally no claim will lie for emotional disturbance. The Court continued, however:

> We adhere to the view that where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone. We hold, however, that where the claim is for emotional disturbance and physical injury resulting therefrom, there may be recovery for negligent conduct, notwithstanding the lack of physical impact, provided the injured party properly pleads and proves by clear and convincing evidence that his physical injury was the natural result of fright or shock proximately caused by the defendant's negligence. In other words, there may be recovery in such a case if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.

*Hughes,* 214 Va. at 34, 197 S.E.2d at 219. The case requires "emotional disturbance and physical injury resulting therefrom" and a "chain of causal connection" between the negligence, the emotional distress, and the physical injury. This language appears to indicate that Virginia will allow recovery for emotional problems coupled with physical symptoms.

A few years after *Hughes,* the Court took its principles a bit further. In *Naccash v. Burger,* 223 Va. 406, 290 S.E.2d 825 (1982), the prospective parents of a child took a blood test to find out if they could transmit Tay-Sachs disease to their as yet unborn child. 223 Va. at 410, 290 S.E.2d at 827. A child born with Tay-Sachs, a genetically transmitted disease, has a life expectancy of two to four years. *Id.* Due to a mix-up of blood tests, the couple believed that

10

they could not pass on Tay-Sachs to their child, causing them to forgo additional testing or consider the possibility of an abortion. *Id.* at 410-11, 827. The child was born with Tay-Sachs. *Id.* at 410, 827. The Court said that the incorrect test results amounted to a "direct" injury to the parents. *Id.* at 416, 831. Because they suffered a direct injury, they could recover damages for emotional distress. *Id.* The "direct" injury in *Naccash* consisted of bad information about a blood test. No physical contact or injury occurred. *Naccash* seemed to further vitiate the physical injury requirement.

In *Myseros v. Sissler*, 239 Va. 8, 387 S.E. 2d 463 (1990), however, the Court changed directions once again. *Myseros* says that physical injuries that amount to symptoms of emotional disturbance do not qualify as actionable harm. 239 Va. at 12, 387 S.E.2d at 466. A case of negligent infliction of emotional distress requires "clear and convincing evidence of 'symptoms' or 'manifestations' of *physical injury*, not merely of an underlying emotional disturbance." *Id.* In other words, the plaintiff must allege and prove that he suffered a physical injury that differs from the symptoms of an emotional disturbance, not, as *Hughes* and *Naccash* imply, a physical ailment caused by emotional distress. According to *Myseros*, a physical ailment that constitutes a symptom of emotional distress simply does not make out a case.[3] *Id.*

As the latest pronouncement on negligent infliction of emotional distress, *Myseros* governs this Court, and requires dismissal of the plaintiffs' claim. The Klars did not suffer any physical impact or injury from the mishandling of their mortgage. Distressing as they seem, financial worries do not cause physical injury. They do cause worry and anxiety, which in turn can lead to physical symptoms of the distress. *Myseros* forbids recovery where the plaintiff complains only of emotional harm, which manifests itself physically.

---

[3] Myseros distinguishes *Naccash* by observing "In any event, Naccash is confined to its particular facts and is inapposite." *Myseros v. Sissler*, 239 Va. 8, 9 n.2, 387 S.E.2d 463 (1990).

The plaintiffs have alleged precisely the kind of injury *Myseros* says they cannot assert. Accordingly, the court must dismiss Count V.

### Count VI – Fair Debt Collection Practices Act

Finally, the Court will dismiss Count VI, which alleges that the defendants violated the Fair Debt Collection Practices Act. 15 U.S.C. §§ 1692 *et. seq.* The FDCPA restricts the tactics available to "debt collectors." *Scott v. Wells Fargo Home Mortg., Inc.*, 326 F.Supp.2d 709, 717 (E.D. Va. 2003). It defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA only imposes liability on businesses or groups whose "principal purpose ... is the collection of any debts." *Id.* This generally excludes "creditors, *mortgagors,* and *mortgage servicing companies.*" *Wells Fargo*, 326 F.Supp.2d at 718 (describing these businesses as "not debt collectors and [therefore] are statutorily exempt from liability under the FDCPA") (emphasis in the original). Determining an entity's principal purpose, however, is debt-specific. An entity qualifies as a debt collector, in regards to a specific debt, if it acquired the right to repayment of that debt *after* the debt allegedly went into default. *See Yarney v. Ocwen Loan Servicing, LLC*, 929 F.Supp.2d 569, 575 (W.D. Va. 2013) (quoting *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012) ("an entity that did not originate the debt in question but acquired it and attempts to collect on it ... is either a creditor or a debt collector depending upon the default status of the debt at the time it was acquired") (internal quotations omitted).

Fannie Mae owned the Klars' mortgage and Seterus serviced it. According to the Klars' complaint, Fannie Mae purchased the mortgage, and contracted Seterus to service it, at a time

12

when it was not in default. The allegations of default came later, during Fannie Mae's ownership of the mortgage. Seterus and Fannie Mae's sole interaction with the Klars has been as a mortgage servicer and mortgagor, respectively. Neither Fannie Mae nor Seterus qualify as debt collectors under the FDCPA, and the Klars, therefore do not have a valid claim under the FDCPA. Consequently, the Court will DISMISS Count VI.

### IV. Conclusion

While the Klars will survive the motion to dismiss, the Court has only heard the plaintiffs' allegations, and it has serious reservations about the factual strength of the Klars' case. Consequently, the Court will not set the case for trial at this time, but will set a deadline for summary judgment motions, which will be due after the parties develop the facts more fully, either through affidavit or discovery.

In summary, the Court DISMISSES Count IV, V, and VI, in their entirety. The Court DENIES the motion to dismiss Counts I and II, but rules that the defendants may not rely on account statements to show fraud. Within twenty-one days, the defendants must file a more definite statement specifying the alleged fraudulent statements forming the basis of their fraud claims. The Court DENIES the motion to dismiss Count III.

The Court shall enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and via U.S. Mail to the *pro se* plaintiffs.

Date: 1/31/14
Richmond, VA

/s/ _____
John A. Gibney, Jr.
United States District Judge